UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-15, ROBERT M. SILLS,

        Defendant,
_____/

Case No. 06-20663

HON: AVERN COHN

### MEMORANDUM AND ORDER DENYING MOTION FOR NEW TRIAL BASED ON NEW EVIDENCE

**I.**

This is a criminal case. Defendant, Robert M. Sills, after a seven day jury trial, was found guilty of a violation of 21 USC §§ 841(a)(1) and 841(b)(1)(A)(ii)(II), Conspiracy to Distribute Five Kilograms or More of Cocaine. Defendant has yet to be sentenced.

Now before the Court is defendant's Motion For New Trial Based On New Evidence (Dkt. 565). The new evidence consists of (1) an airline ticket establishing that defendant could not have been present at a drug transaction testified to by Danny Jones (Jones), a government witness at trial, and (2) the affidavit of Jonathan Mitchell (Mitchell), describing a statement by Jones that he was going to arrange for someone to kill defendant. The government has responded. For the reasons which follow, the motion is DENIED.

II.

A.

At trial twelve witnesses testified in the government's case. Eight of the witnesses were law enforcement officers, including Drug Enforcement Administration agents, police officers and a retired Internal Revenue Service agent. Four of the witnesses, including Jones, were co-defendants who had pled guilty and were testifying pursuant to cooperation agreements. The government introduced into evidence over sixty exhibits, including video tapes, photographs of cocaine, drug paraphernalia, photographs of drug premises, photographs of currency and automobiles, cellular phones, driver's licenses, notebooks, intercepted phone calls and a miscellany of other items, all related to drug activities.

B.

In general the proofs at trial were such that a properly instructed jury (there were no objections to the instructions) could find that defendant was a drug distributor for a national group of people involved in drug activity known as the Black Mafia Family, and headed by the Flenory brothers.

The evidence at trial established the existence of the multi-member drug distribution group operating in major American cities.

Particularly, several witnesses testified that defendant received drugs from the Flenory brothers for many years at various locations in St. Louis. These witnesses testified to delivering drugs to defendant in St. Louis, and that on occasion defendant would open hidden compartments in the automobiles in which the deliveries were made, both to retrieve drugs and to place cash in them. Police officers testified as to the seizure of vehicles

containing drugs which were being driven by members of the Black Mafia Family which made deliveries to defendant. Ledger sheets reflecting drug transactions attributed to defendant were also introduced into evidence.

### III.

### A.

As to the airline ticket evidence, the evidence at trial established that defendant, along with others, was arrested in the midst of a gambling party on October 25, 2005 at a house in St. Louis. Jones testified that earlier on October 25, 2005 defendant had bought drugs for cash at the house.

Defendant says that newly discovered evidence in the form of an airline ticket established that defendant was in Houston, Texas, the morning of October 25, 2005 and did not arrive in St. Louis until the afternoon, and, therefore, could not have been at the house the morning of October 25, 2005. Jones' trial testimony on this point was a small piece of the multiple drug activities implicating defendant which were testified to at trial.

The government's description of Jones' testimony in its brief amply supports the conclusion that the discrepancy that defendant proffers in Jones' testimony did not play a significant role in the proofs. The government says:

> [T]he jury's presumed interpretation of Jones' testimony is consistent with the rest of the overwhelming evidence in the case. There were telephone calls intercepted on the Title III wiretap referencing "Fat" and taking care of "Fat," (Exhibit 2, Arnold Boyd's testimony on February 5, 2009, Volume 4, pp. 57-59); references to "Fat" and "Fat Cat" all throughout the drug ledgers (Exhibits 581 A-D; Exhibit 2, Arnold Boyd's testimony on February 4, 2009, Volume 3, pp. 60-68) and the testimony of three additional co-defendant witnesses: (1) Arnold Boyd, who testified that he had personally delivered 40 kilograms and then 75 kilograms of cocaine to defendant as

well as directed others to deliver cocaine to him (Exhibit 2, Transcript of Arnold Boyd's testimony on February 4, 2009, Volume 3, p. 69); (2) Charles Parson, who testified that he had delivered cocaine to defendant personally on three occasions in 2004, 40 kilograms, 10 kilograms and 10 kilograms, respectively (Exhibit 3, Charles Parson's testimony on February 5, 2009, Volume 4, p. 82); and (3) Walter Carroll, who testified that he personally delivered cocaine to defendant twice with his cousin, Stanley Lackey (Exhibit 4, Transcript of Walter Carroll's testimony on February 6, 2009, Volume 5, pp. 34-38). In short, the evidence of defendant's flight records was not "material," is offered now for impeachment purposes and is inconsequential in light of the evidence referenced above.

**B.**

As to the affidavit of Mitchell, which states that Jones told him that he was going to arrange for the killing of defendant, the defendant says this displays an animus toward defendant which is important to a proper assessment by the jury of Jones' credibility.

The government's brief amply supports the conclusion that this evidence should have been discovered by defendant before trial, and has little relevance to an assessment of Jones' credibility. The government says:

> Jonathan Mitchell was a potential witness known to defendant prior to trial. Mitchell was arrested along with defendant at 2 Jamestown Place on October 26, 2005 and was referenced in the DEA report dated November 16, 2005, which chronicled the arrests. Moreover, in a DEA report dated June 4, 2008, which was provided to defendant, Danny Jones stated that Jonathan Mitchell is defendant's "right-hand man" who distributed cocaine in the St. Louis area. Thus, Mitchell was a potential witness known to defendant, and based on the discovery provided, defendant could easily surmise what questions the government would have asked in response to his testimony, namely what his relationship was with defendant and whether he was defendant's "right-hand man." Defendant may have known that calling Mitchell as a witness could have been problematic because Mitchell could have incriminated himself had he testified. Providing an affidavit of immaterial statements from an individual known to defendant prior to trial where there were obvious issues with calling him as a witness and then calling it new evidence is simply not viable.

4

Additionally, the government says:

> [D]efendant knew Danny Jones was a witness, and he could have sought out witnesses to discredit Jones, which is what Mitchell's affidavit attempts to do several months after trial. Instead, defendant presents an affidavit by an individual known to him prior to trial who says that Jones made statements to him about Sills, which presumably provides a motive for Jones to testify falsely against Sills.[3] Had Mitchell been made available at trial and had he testified as his affidavit indicates, defendant would have brought up an issue that could have hurt, rather than helped, defendant at trial: Jones believed that defendant tried to have him killed because he was going to testify against him; the affidavit supports this belief. That, coupled with Jones' obvious injuries while on the witness stand and additional testimony from Jones that he believed Sills tried to kill him may not have even been ruled admissible by the Court because of the prejudicial nature of the testimony. The Court may have had to protect defendant from himself by disallowing Mitchell's testimony because of the counter to it the government would have been entitled to introduce – testimony from Jones that he believed defendant tried to kill him and in spite of that belief and fear, he was telling the truth because Sills was in fact a distributor of cocaine for the Flenory group.

---

[3] Defendant neglects to mention that there was an *in camera* hearing conducted prior to trial regarding Danny Jones' belief that defendant was responsible for his injuries. Defendant was provided the October 15, 2008 DEA report chronicling Jones' statement on the issue. At that hearing, the parties determined that there would not be any testimony elicited from Jones regarding his belief that defendant hired an individual to kill him because he was a witness against defendant. To now present Mitchell's affidavit, which references Jones' belief, and to suggest that it is new, admissible evidence is incredible.

**IV.**

**A.**

FED. R. CRIM. P. 33 (New Trial) provides that the Court may vacate a judgment and grant a new trial if the interests of justice so require.  To prevail on a motion for new trial on the grounds of newly discovered evidence, a defendant must show that:

> (1)  the new evidence was discovered after trial;
> (2)  the evidence could not have been discovered with due diligence;
> (3)  the evidence is material and not merely cumulative or impeaching; and
> (4)  the evidence would likely produce an acquittal.

United States v. Garcia, 19 F.3d 1123, 1126 (6th Cir. 1994).

**B.**

As described above, the newly discovered evidence which defendant predicates his right to a new trial consists of

> (1)  Flight records that show defendant flew from Houston, Texas to St. Louis, Missouri, on October 25, 2005, arriving in St. Louis at 6:50 pm.
>
> (2)  The affidavit of Mitchell.

**C.**

Defendant offers no explanation as to why the flight records were not available at trial, which was almost four years after the flight which defendant says he took.  Defendant offers no explanation as to why he did not know of the Mitchell-Jones conversation until after the trial.

**D.**

As stated in the government's response to defendant's motion:

> Well in advance of trial, defendant was provided discovery, including reports of witness statements (Danny Jones and of the other co-defendant witnesses who testified against him), a witness list that included Danny Jones and a detailed exhibit list. The government's theory of the case against defendant was clear: he was the largest distributor of cocaine for Terry Flenory in St. Louis, and the government had persuasive evidence to support that theory (in addition to all of the evidence that he was part of the conspiracy, there was evidence that defendant's nickname "Fat" or "Fat Cat" was written all throughout the drug ledgers, he was referenced in intercepted T-III calls and numerous co-defendant witnesses testified that they had delivered cocaine to Sills on multiple occasions). Had defendant been diligent, he could have obtained flight records in the intervening three and a half years between his arrest and trial, and he could have found his own witnesses to discredit Danny Jones or any other co-defendant witness. Because defendant cannot meet this initial standard – that he discovered this "new evidence" after trial – his motion must be denied pursuant to Rule 33. . . .

This response by the government adequately explains why defendant's papers fail to support a finding that the evidence defendant proffers cannot be held newly discovered.

**E.**

In conclusion, as the government says:

> [D]efendant has not presented any new evidence to the Court. Instead, defendant provides a plane ticket receipt that could have been presented at trial because it was within defendant's knowledge and control at the time of trial, and an affidavit supplied by a witness who could have been called as a witness at trial had defendant been diligent in preparing his defense. Defendant's motion largely criticizes the testimony of co-defendant Danny Jones, despite defendant having had the opportunity for rigorous cross examination of Jones at trial. As argued below, defendant fails to meet the standards of Rule 33, and his motion must be denied as a result.

7

It is for the foregoing reasons that defendant's motion for new trial has been denied.

SO ORDERED.

        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated:  October 26, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 26, 2009, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5160