UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

vs.                                         Case No. 06-20663

ROBERT M. SILLS,                       HON AVERN COHN

      Defendant/Petitioner.

_____/

## MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
## (Doc. 863)
## AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2255.  Petitioner, Robert M. Sills, was found guilty by a jury to one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii)(II), for which he received a custody sentence of 136 months imprisonment.  Before the Court is Sills' motion under §2255 in which he contends that he was deprived of his Sixth Amendment right to effective counsel.  Sills specifically claims that his counsel was ineffective when he failed (1) to object to the government's vouching for the drug ledgers during rebuttal closing argument, (2) to object to the government's comment on Sills' right to silence, (3) to investigate the government's witness Danny Jones, (4) to present evidence of Sills' October 26, 2005 flight from Houston, Texas to St. Louis, Missouri, and (5) to object to the government playing an undisclosed tape during trial. Sills also contends that the government committed prosecutorial misconduct which

violated his rights of due process and a fair trial under the Fifth Amendment.  The

government has filed a response to the motion.  Sills has filed a reply.  The matter is

now ready for decision.[1]  For the reasons that follow, the motion will be denied.

## II. Background[2]

### A.

Sills was a member of the drug trafficking organization known as the Black Mafia

Family (BMF).  From 2003 through 2005, Sills received multiple kilograms of cocaine

and money from BMF.  Sills, also known as "Fat" or "Fat Cat" within the organization,

was one of the largest cocaine distributors for BMF.  BMF was dissolved after the Drug

Enforcement Administration raided a drug house used by BMF in St. Louis, Missouri,

arresting Sills and 17 of his co-conspirators.

On December 15, 2006, Sills was indicted on one count of violation of 21 U.S.C.

---

[1]Sills also requested discovery and an evidentiary hearing.  However, the motion papers, together with the files and record, "conclusively show that Defendant is entitled to no relief."  28 U.S.C. § 2255; see also Rule 4(b), 28 U.S.C. § 2255 Rules.  Therefore, the motion may be resolved without discovery or an evidentiary hearing.  United States v. Johnson, 327 U.S. 106, 111. (1946); Baker v. United States, 781 F. 2d 85, 92 (6th Cir. 1986).  Rather, only when a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'"  Valentine, 488 F.3d at 333 (quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999)).  A hearing is not necessary, however, when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'"  Id. (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).  Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on his or recollections of the trial.  Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).  The undersigned has done so in this case.

[2]Also incorporated by reference is the Court's recitation of the evidence at trial in its Memorandum and Order denying Sills' motion for new trial.  (Doc. 589 at p. 2-3).

§§ 841(a)(1) and 841(b)(1)(A)(ii)(II), Conspiracy to Distribute Five Kilograms or More of Cocaine.  After plea negotiations were unsuccessful, the government filed an Information on January 29, 2009 stating that it intended to seek a sentence enhancement pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(a) based on Sills' 1995 conviction in Missouri for possession of a controlled substance.  Sills challenged the government's reliance on his prior conviction.  Sills also moved to adjourn the trial.  The Court denied the motion to adjourn (Doc. 413) and trial began on February 2, 2009.

Sills' co-conspirators testified against him at trial.  The evidence against Sills was overwhelming.  Arnold Boyd, a close associate of the BMF leadership, testified that he personally delivered cocaine to Sills, and also interpreted drug sale ledgers with the name "Fat" on them as referring to Sills.  The drug ledgers listed how drugs were transported, where the drugs were going, and how much money was involved with each transaction.  Danny Jones, another co-conspirator, testified that Sills had received 50 kilograms of cocaine on the same day that the DEA raided the drug house in St. Louis.

At trial, the government argued that the jury could convict Sills on the combined evidence of witness and law enforcement testimony, recorded telephone conversations, physical evidence pertaining to cocaine and money, and the drug ledgers found at the drug house associated with BMF.  Sills in turn argued that the co-conspirators that testified against him were not credible, specifically Arnold Boyd's testimony regarding the drug ledgers and Danny Jones' testimony on his relationship with Sills.  Sills did not testify.

On February 10, 2009, after a seven day trial, the jury found Sills guilty.

On September 11, 2009, Sills filed a motion for new trial based on newly

3

discovered evidence.  The new evidence consisted of an airline ticket which showed

Sills was in Houston, Texas the morning of October 25, 2005 and did not arrive in St.

Louis until the afternoon.  Therefore, Sills could not have been at the house in St. Louis

on October 25, 2009 which contradicted Danny Jones' testified at trial that Sills had

brought drugs for cash.  Also offered was the affidavit of Jonathan Mitchell, describing a

statement by Jones that he was going to arrange for someone to kill Sills.  The On

October 26, 2009, the Court issued a Memorandum and Order denying the motion,

finding that neither piece of evidence warranted a new trial, particularly given the weight

of the evidence against Sills.  (Doc. 589).  Sills filed a motion for reconsideration, which

was also denied.  (Doc. 615).

Sills' sentencing was set for November 30, 2009.  On that date, Sills challenged

the admissibility of the documents the government proffered as proof of his prior

conviction to seek a sentence enhancement .  The Court adjourned the sentencing and

issued a Memorandum and Order (Doc. 619) outlining the procedure for Sills to object

to the enhancement, which included full briefing by the parties and setting an

evidentiary hearing on the enhancement.  On February 18, 2010, the Court held an

evidentiary hearing to determine if the enhancement could be applied.  On March 10,

2010, the Court issued a Memorandum and Order finding that the government failed to

prove Sills' prior felony conviction and therefore could not seek an enhancement under

§ 841.  (Doc. 666).

On June 28, 2010, Sills was sentenced to 136 months, as stated above.

Sills, through new counsel, filed a direct appeal.  On appeal, Sills argued that the

evidence was insufficient to convict him and that the district court plainly erred when it

4

allowed into the record certain remarks made by the prosecution regarding the drug

ledgers and the defendants' election not to testify at trial.  The Court of Appeals for the

Sixth Circuit affirmed Sills' conviction.  United States v. Sills, 662 F.3d 415 (6th Cir.

2011).  The Supreme Court denied certiorari.  Sills v. United States, No. 132 S.Ct. 2408

(May 14, 2012).

Sills, through another new counsel, then filed the instant motion.

### III.  The Law

Title 28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . .or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

To prevail under § 2255, petitioner must show a "fundamental defect which inherently

results in a complete miscarriage of justice."  United States v. Timmreck, 441 U.S. 780,

783 (1979) (quoting Hill v. United States, 386 U.S. 424, 428 (1962)).

It is also  well-established that a § 2255 motion "is not a substitute for a direct

appeal."  Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) (citing United

States v. Frady, 456 U.S. 152, 167-68 (1982)). Accordingly, claims that could have been

raised on direct appeal, but were not, will not be entertained via a motion under § 2255

unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise

the claims previously; or (2) that he is "actually innocent" of the crime.  Bousley v.

United States, 523 U.S. 614, 622 (1998) (internal citations omitted).

In order to succeed on a claim of ineffective assistance of counsel, a petitioner

5

must show (1) that his counsel's performance was constitutionally deficient in that the performance "fell below an objective standard of reasonableness under prevailing professional norms" and (2) that he was prejudiced by his counsel's errors.  Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  In order to establish prejudice, a petitioner must demonstrate that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

## IV.  Analysis

### A.

Sills says that his trial counsel was ineffective at trial for a number of different reasons.  Each will be addressed in turn.

### 1.

First, Sills says that his counsel failed to object to the government's vouching of the drug ledgers during the government's closing argument.  Sills says that if counsel had objected, the Court would have sustained the objection and led to either a mistrial or a new jury instruction.  The government says that Sills has already effectively lost this argument on appeal.  Sills says that he had not lost this argument on appeal because the direct appeal decision was reviewed for plain error, while his claim of ineffective counsel should be reviewed under the Strickland standard.

Even if Sills' claim is reviewed under Strickland, it still fails on the merits.  On appeal, Sills argued the same issue regarding the government improperly vouching for the drug ledger evidence.  United States v. Sills, 662 F.3d 415, 417 (6th Cir. 2011).  In

6

response to Sills' argument, the Sixth Circuit held that even if the government's comment was seen as vouching for the evidence, "[g]iven the strength of the government's case, [the comment was] at most harmless error." Id. at 418. Furthermore, Sills' counsel may not have objected during the government's closing argument, but counsel objected repeatedly during Boyd's testimony regarding the drug ledgers and challenged his credibility as a witness. Sills admits that, trial counsel's only mode of attack on the ledgers was to question the credibility of Boyd's testimony. Sills' counsel further challenged Boyd's credibility as to his knowledge of the ledgers during cross-examination and as part of the defense's closing statement. In addition, the jury was instructed by the Court that they are the, "sole judges of the credibility of the witnesses and the weight their testimony deserves." Sills' counsel made clear his objection to Boyd's testimony on the ledgers throughout the trial. As such, his performance does not qualify as ineffective under the Strickland standard. Counsel was therefore not ineffective for failing to object to the government's statements in rebuttal closing argument about the drug ledgers.

## 2.

Second, Sills says that his trial counsel was ineffective for his failure to object to the government's comment on Sills' right to remain silent. As with the first claim, the government says this issue was raised and rejected on direct appeal. Sills again says that the issue should now be reviewed under the Strickland standard. While Sills may not be precluded from bringing claims of ineffective counsel under §2255, the direct appeal decision is instructive to this claim. Even under the different standard of review, Sills' second claim of ineffective counsel fails on the merits.

7

The Sixth Circuit addressed this issue regarding the government's comment on Sills' right to remain silent.  The Sixth Circuit stated, "the prosecutor commented on the defendant's failure to testify, but not in a way that would encourage the jury to infer guilt."  Sills, 662 F.3d at 418.  Furthermore, "the comment closely mirrors the instruction given to the jury by the judge."  Id.  The Court instructed the jury as follows:

> [t]he defendant has chosen not to testify.  As I have told you, the law does not compel a defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant has not testified.

(Trans. Vol. 7 at 94).  Based on the record, Sills' counsel was not unreasonable in his decision not to object to the government's comment.

Sills also argues that if trial counsel had objected to the government's comment, the Court would have sustained the objection because this Court had previously warned the government of overreaching.  However, there is no evidence in the record to justify this assertion.  In fact, the warning of "overreaching" by the government was with respect to the number of witnesses the government planned on calling to testify, and was made with no reference to Sills' right to silence or the ledger entries.

Even if the government's comment may be seen as improper, there is not a reasonable probability that an objection to the comment by Sills' trial counsel would have changed the outcome and therefore prejudiced Sills.  Based on the fact that this Court issued a clarifying instruction to the jury on this issue along with the determination that the government's comment was a "harmless error", Sills has failed to show that his counsel was ineffective because of trial counsel's failure to object.

**3.**

Third, Sills says that his counsel was ineffective because counsel failed to

8

perform an adequate pre-trial investigation of co-conspirator Danny Jones.  Sills further says that had trial counsel conducted a reasonable investigation of Jones, he would have discovered evidence that the two men did not attend high school together and then use that evidence to impeach Jones' credibility.

Applying the Strickland standard, Sills cannot prevail on this claim.  Because high school records were being used as background information and not a major issue, it was reasonable for Sills' counsel not to obtain them before trial.  In fact, the Court said that the high school records were not material to the case.  The fact that a document, much less an immaterial document, may be available to counsel before trial, does not mean counsel was ineffective for choosing not to use it.  Counsel's decision to forego use of the high school records was in the protected realm of reasonable trial strategy.

In addition, Sills was not prejudiced by his trial counsel's decision not to obtain and use the high school records in order to impeach Jones' testimony.  Sills' counsel used both the cross-examination and closing statement to impeach Jones' credibility.[3] Sills' counsel questioned Jones numerous times on cross-examination with respect to the discrepancies about his high school attendance.  Furthermore, Sills' counsel questioned Jones' credibility by examining his past criminal history and his cooperation with the government to testify in the case.  In his closing statement, Sills' counsel stated that Jones, "[l]ied about his relationship or at least was confused about his alleged high

_____

[3]The government notes that Jones' testimony regarding his relationship with Sills in high school has not been disproved.  Sills did attend and graduated from Vashon High School in 1991.  Jones also attended Vashon and was enrolled in special education classes that may have required his remaining in 9th grade for an additional period of time.  Despite the age difference, it remains a possibility that the two men did attend the school at the same time.

school relationship with Mr. Sills."  Based on the full record, Sills' trial counsel acted reasonably when he did not obtain the high school records before trial and an objection would not have altered the outcome of the trial.

### 4.

Fourth, Sills says that his trial counsel was ineffective for failing to investigate and present at trial his flight record from Houston, Texas to St. Louis, Missouri.  This flight occurred the same day as the DEA raid of BMF's drug house at which Sills was arrested.  Sills claimed that if this flight record had been presented at trial, it would contradict Jones' testimony that Sills was involved in a drug transaction involving 50 kilograms of cocaine earlier on that same day.  Sills argued that it would have been physically impossible for him to participate in the drug deal because he did not arrive in St. Louis until 7:30 p.m.

Sills' counsel was not ineffective counsel for failing to present the flight records because they do not disprove that Sills was part of a drug transaction on the day of the raid.  Jones testified that he observed the cocaine transaction involving Sills on that "day" with no reference to time of day.  The word "day" could be used to describe the early morning or the late evening.[4]   The fact that Sills' plane did not land in St. Louis until 6:50 p.m. does not disprove Jones' testimony that Sills took part in a 50 kilogram cocaine transaction that night.[5]  There was plenty of time for Sills to arrive in St. Louis

---

[4]There is nothing in the record to suggest that Jones' testimony as to observing Sills' drug transaction during the "day" meant sometime before 7:30 p.m.

[5]Sills does not address the government's argument that the flight records do not necessarily disprove Jones' testimony regarding the drug transaction.

and conduct a drug transaction before the house raid occurred around 11:00 p.m.  Sills'

trial counsel acted reasonably when he choose not to present the flight records. .

Additionally, Sills did not provide any evidence that it would be physically impossible for

him to have landed in St. Louis and conduct the drug transaction that evening before

being arrested.  Moreover, the Court addressed this issue in its decision denying Sills'

motion for a new trial, noting that the flight records were not material even if they

contradicted Jones's testimony, stating:

> The government's description of Jones' testimony in its brief amply
> supports the conclusion that the discrepancy that defendant proffers in Jones'
> testimony did not play a significant role in the proofs.  The government says:
> > [T]he jury's presumed interpretation of Jones' testimony is
> > consistent with the rest of the overwhelming evidence in the
> > case. There were telephone calls intercepted on the Title III
> > wiretap referencing "Fat" and taking care of "Fat," (Exhibit 2,
> > Arnold Boyd's testimony on February 5, 2009, Volume 4, pp.
> > 57-59); references to "Fat" and "Fat Cat" all throughout the
> > drug ledgers (Exhibits 581 A-D; Exhibit 2, Arnold Boyd's
> > testimony on February 4, 2009, Volume 3, pp. 60-68) and the
> > testimony of three additional co-defendant witnesses: (1)
> > Arnold Boyd, who testified that he had personally delivered 40
> > kilograms and then 75 kilograms of cocaine to defendant as
> > well as directed others to deliver cocaine to him (Exhibit 2,
> > Transcript of Arnold Boyd's testimony on February 4, 2009,
> > Volume 3, p. 69); (2) Charles Parson, who testified that he had
> > delivered cocaine to defendant personally on three occasions
> > in 2004, 40 kilograms, 10 kilograms and 10 kilograms,
> > respectively (Exhibit 3, Charles Parson's testimony on
> > February 5, 2009, Volume 4, p. 82); and (3) Walter Carroll, who
> > testified that he personally delivered cocaine to defendant
> > twice with his cousin, Stanley Lackey (Exhibit 4, Transcript of
> > Walter Carroll's testimony on February 6, 2009, Volume 5, pp.
> > 34-38). In short, the evidence of defendant's flight records was
> > not "material," is offered now for impeachment purposes and
> > is inconsequential in light of the evidence referenced above.

(Doc. 589 at p. 3-4).

Thus, the failure to use the flight records would not have changed the outcome of

the trial.  As such, Sills cannot prevail based on this allegation of ineffectiveness.

**5.**

Fifth, Sills says that his counsel was ineffective for not objecting to the playing of an undisclosed telephone call between BMF members during the government's questioning of co-conspirator Arnold Boyd.  Sills says that the phone call played during trial was not the same version he received during pre-trial discovery.  Although Sills included an affidavit in his reply which set forth his recollection of the call played at trial, it is merely a restatement of his allegation in the §2255 motion.  A self-serving affidavit without further evidence is not enough to be successful on a claim of ineffective counsel.  See Hronek v. United States, 250 Fex.Appx. 134, (6th Cir. 2007).  Because there is evidence to substantiate Sills' allegation that the tape played at trial varied from what was produced pretrial.  Nor has Sills showed good cause to justify a discovery hearing.  Sills' fifth claim of ineffectiveness lacks merit.

**B.**

Sills also says that the government committed prosecutorial misconduct when it played the phone call during Boyd's testimony, which it allegedly did not disclose to the defense.  In order to prevail on a claim of prosecutorial misconduct,

> it is not enough that the prosecutor's comments were improper, but the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Courts apply a 'two-part test to determine . . . the federal standard.'  We first determine whether the prosecution's conduct was improper.  Second, we determine whether that improper conduct was flagrant by considering four factors: '(1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.'

Wogenstahl v. Mitchell, 668 F.3d 307, 327-28 (6th Cir. 2012) (citations omitted).

**1.**

Sills did not raise a claim of prosecutorial misconduct on direct appeal. As such the claim is procedurally defaulted. In order to overcome his default, Sills must show, "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167 (1982). Sills has not meet his burden.

First, Sills says that appellate counsel was ineffective in failing to raise this claim so as to establish cause for his default.[6] "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." McMeans v. Brigano, 228 F.3d 674(6th Cir.2000), citing Strickland and Rust v. Zent, 17 F.3d 155, 161–62 (6th Cir.1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir.2004), citing Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir.2001), cert. denied, 535 U.S. 940 (2002). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." Webb v.

---

[6]In his reply, Sills cites Elzy v. United States, 205 F.3d 882, 886 (6th Cir. 2000) for the proposition that a government's failure to raise procedural default as a defense may waive their right to use procedural default to defend against §2255 claims. In Elzy, the government did not argue procedural default in responding to the defendant's §2255 motion, either in the district court or on appeal. That is not the case here.

13

Mitchell, 586 F.3d 383, 399 (6th Cir., 2009).

Here, there is nothing in the record to reasonably justify Sills' claim that his appellate counsel was ineffective. To the contrary, appellate counsel raised multiple issues on appeal. While ultimately Sills did not prevail on appeal, it does not follow that appellate counsel was ineffective. Moreover, the fact that appellate counsel did not raise a claim of prosecutorial misconduct is not evidence of ineffectiveness. Appellate counsel need not advance every argument, regardless of merit, urged by the appellant. Jones v. Barnes, 463 U.S. 745, 751–752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52). Sills has failed to show that appellate counsel was ineffective, and therefore has not established cause to excuse his procedural default.

Even if Sills' claim could show 'cause' under Frady, he has not shown prejudice, particularly given the strength of the government's proofs.

## V.  Conclusion

Sills was represented by competent counsel, at trial and on appeal. Trial counsel vigorously challenged the credibility of the government's witnesses and was successful in challenging the government's sentencing enhancement. Appellate counsel raised appropriate issues on appeal. While neither trial nor appellate counsel were ultimately successful in their efforts, they were not ineffective. Based on the full record, Sills has failed to show that he is entitled to relief under § 2255.

Furthermore, reasonable jurists would not debate the Court's assessment of Sills' claims, nor conclude that the issues deserve encouragement to proceed further. The

14

Court therefore DENIES a certificate of appealability under 28 U.S.C. § 2253(c)(2).[7]

See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

      SO ORDERED.


                            S/Avern Cohn
                            AVERN COHN
                            UNITED STATES DISTRICT JUDGE


Dated:  September 13, 2013

Detroit. Michigan


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 13, 2013, by electronic and/or ordinary mail.


                            S/Sakne Chami
                            Case Manager, (313) 234-5160

---

[7]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. ' 2254.