UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case Number 06-20663

v.                                         Honorable David M. Lawson

ROBERT M. SILLS,

        Defendant.

_____/

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Defendant Robert Sills has filed a motion and an amended motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Sills has served most of his 136-month sentence imposed by the Honorable Avern Cohn in this case for a drug conspiracy. However, Sills also must serve a 120-month consecutive sentence handed down in another district for a different drug conspiracy conviction. Sills argues that a sentence reduction is justified by his medical conditions (obesity, hypertension, asthma, and an undefined nerve condition) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The district court in the Eastern District of Missouri recently denied Sills's similar request, and the decision was summarily affirmed by the Eighth Circuit. It is unclear that any relief granted by this Court would benefit the defendant. But even if it would, the present facts and circumstances do not amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires. Moreover, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Sills has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motions will be denied.

I.

In December 2006, Sills was charged along with 25 others in a multi-count indictment with drug trafficking offenses related to an organization known as the Black Mafia Family ("BMF"). Demetrius Flenory and his brother, Terry Flenory, were the leaders of the BMF. By the time Flenory and his brother were indicted, their enterprise had distributed massive quantities of cocaine across several states. At its height, the BMF was estimated to employ over 500 people. Sills worked for the BMF as Terry Flenory's right-hand man in Missouri. Among other things, Sills arranged drug deals, supervised distributors, loaded and unloaded vehicles with cocaine, and customized the BMF's transportation fleet to conceal evidence of drug trafficking activity.

Sills was convicted by a jury on February 10, 2009 of conspiring to distribute five or more kilograms of cocaine, and Judge Cohn sentenced him to 136 months in prison on June 28, 2010.

On September 16, 2011, the district court in the Eastern District of Missouri imposed an additional, consecutive 120-month sentence after Sills pleaded guilty to conspiring to distribute cocaine. *United States v. Sills*, No. 10-00573, 2020 WL 7770836 (E.D. Mo. Dec. 30, 2020). Defense counsel represents that Sills is "currently serving a 180-month sentence following his conviction on a single drug-related count of attempted possession," but it is unclear where this information came from, and it is not substantiated by the record.

Defense counsel never mentioned Sills's other conviction or prison sentence. The government's response is equally uninformative. Not only did it cite but fail to attach (despite court approval) the defendant's medical records and presentence investigation report, but it completely failed to observe that (1) Sills was subject to the parallel proceedings in the Eastern District of Missouri; (2) the court in that district denied a nearly identical motion for compassionate

release on December 30, 2020 (six days before Sills filed his present motion); and (3) the Eighth Circuit summarily affirmed the compassionate release denial.

The defendant also faced murder-for-hire charges in the Eastern District of Missouri, but he pleaded guilty to witness tampering in violation of 18 U.S.C. 1512(b)(1) as part of a global settlement. However, the defendant challenged his plea as invalid because the federal witness tampering statute applies only to witnesses in federal proceedings; the government conceded error and the conviction was vacated.

Several years later, in 2014, Judge Cohn reduced Sills's sentence imposed in this case to 120 months under 18 U.S.C. § 3582(c)(2).

Sills began serving his sentences on October 17, 2011 and is scheduled to be released on November 30, 2027. According to the parties, Sills presently is confined by the Bureau of Prisons (BOP) at Pollock USP, a high-security penitentiary in Louisiana that houses about 1,200 inmates. However, Sills's online record indicates that he is held at Talladega FCI. BOP Inmate Locator, https://www.bop.gov/inmateloc.

Sills is 47 years old and suffers from asthma, an unspecified nerve condition that causes dizziness and headaches, and obesity (the defendant is 6'2" and weighs about 255 pounds, resulting in a body mass index (BMI) of 32.7). He also alleges that he suffers from hypertension, but there is no evidence supporting that allegation in the record.

Sills submitted a request for home confinement and compassionate release to the Warden of Pollock USP, who denied the requests on August 20, 2020. The defendant filed a *pro se* motion for compassionate release on January 5, 2021, which he supplemented by counsel on March 16, 2021.

The most recent data disclosed by the BOP for Pollock USP indicates that there are no active coronavirus cases among inmates, but there are 84 cases among staff. In addition, 581 inmates and 20 staff members previously were diagnosed and now have recovered. No inmates or staff have died from the virus. *See* https://www.bop.gov/coronavirus/. The BOP also reports that it fully inoculated 281 staff members and 1,377 inmates at the Pollock FCC. Although it is unclear how many inmates at Pollock USP have been inoculated, Sills was offered the Pfizer vaccine on January 14, 2021, but refused because, he says, he suffers from allergies.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Sills relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the

court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts

need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Sills argues that his pre-existing medical conditions consisting of hypertension, asthma, undefined nerve condition, and obesity (BMI 32.7) render him vulnerable to complications from the highly contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." 980 F.3d at 1102 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention

("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The government disputes that the defendant established an extraordinary and compelling reason for his release, although it never addressed the defendant's allegation of obesity, which he did not raise until he received the assistance of counsel.

The government is correct that the defendant's asthma and unspecified nerve condition do not satisfy the extraordinary and compelling standard. The CDC has not identified any nerve disorders that may increase one's susceptibility of developing a severe illness from COVID-19. *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (May 13, 2021), https://bit.ly/32UK6is. And it considers only "moderate to severe" asthma as a condition that "can make [an] individual more likely to get severely ill" from the virus. *Ibid*. The defendant's medical records do not reflect that he suffers from moderate to severe asthma; his medical records reflect that his respiratory system is "within normal limits" and that his asthma is "controlled with occasional albuterol."

Before defense counsel filed the amended compassionate release motion, the defendant filed a *pro se* reply alleging that he was "currently in route [to] a medical facility, under-cutting the government's argument that [he] is in good health." It is unclear why the defendant allegedly required medical treatment; and it is even less clear how he could prepare a *pro se* reply brief while "currently in route [to] a medical facility." Defense counsel never supplemented this allegation with any evidence.

The defendant's last-minute allegation of obesity is unpersuasive because the record is unclear and unhelpful. The defendant relies on the presentence report, which states that he is 6'2" and weighs about 255 pounds, making his BMI hover around 32.7. But the presentence report is over 10 years old and there is no current information on the defendant's weight.

The circumstances of the pandemic are fluid and rapidly evolving; both the CDC's guidance and the circumstances at each institution change on a daily basis. In this case, despite the sketchy evidence of Sills's medical factors, the overall picture of the pandemic's progress at his facility does not establish that the BOP is not able to manage the risk of infection appropriately.

Taking all of these circumstances into account, the defendant has failed to establish that an extraordinary and compelling risk to his health presently warrants his immediate release.

C.

Even if the defendant has made a satisfactory showing of extraordinary and compelling circumstances, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

There is no requirement that the prisoner must establish a lack of dangerousness, as is the case for compassionate release applications made by the BOP. *See* U.S.S.G. § 1B1.13; *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Moreover, the Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed "to remain [] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant,

therefore, must "make a compelling case as to why the court's § 3553(a) analysis would be different if conducted today." *Ibid.*

The government concedes that "there are some positive § 3553(a) factors in Sills's favor," like his low recidivism rate and completion of prison programming. Although the government points out that Sills was disciplined twice for possessing unauthorized items, at least one of those citations were dismissed on appeal.

However, good behavior is expected, and Sills's crimes are serious. Although he does not have a significant history of criminal convictions, he played a key role in a prolific drug distribution enterprise. He was a high-level regional manager for the BMF and is partially responsible for the organization's success in St. Louis. Moreover, the length of his remaining sentence — over six years — weighs heavily against his release. *See Ruffin*, 978 F.3d at 1008. Sills argues that the Court should consider the fact that the BOP granted Terry Flenory's request for compassionate release and that denying him the same consideration will subject him to a sentencing disparity. Compassionate release motions, however, are committed to the district court's discretion and depend on the unique considerations in each case. *Elias*, 984 F.3d at 520.

Although Sills maintained a good disciplinary record in prison and completed several educational and vocational programs, releasing him now would not promote respect for the law.

III.

Sills has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified. This is particularly true considering that the defendant recently and unsuccessfully requested compassionate release, the denial of which was affirmed by the Eighth Circuit.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 970, 979) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: May 18, 2021